527 So.2d 420 (1988)
Thomas W. WILSON, Jr.
v.
John CLINE and Fireman's Insurance Company and New Orleans Public Service, Incorporated and State Farm Mutual Automobile Insurance Company.
No. CA-6506.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1988.
Rehearings Denied July 19, 1988.
Michael B. McColloster, Metairie, for plaintiff-appellee.
Owen A. Neff, Peter S. Title, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, for defendant-appellee State Farm Mut. Auto. Ins. Co.
Charlton B. Ogden, II, Carter B. Wright, New Orleans, for defendant-appellant New Orleans Public Service, Inc.
Before WARD, WILLIAMS and ARMSTRONG, JJ.
WILLIAMS, Judge.
In this personal injury case, arising from an intersectional collision, New Orleans Public Service, Inc. (NOPSI) appeals a judgment finding it 50 percent liable for damages incurred by plaintiff. We reverse the trial court judgment in regard to NOPSI and, further, we reduce plaintiff's damages.
*421 The collision occurred on August 14, 1980 at the intersection of Prytania and First Street in New Orleans. Prytania Street has two travel lanes; one for traffic going downtown (east) and one for traffic going uptown (west). Additionally, there is a parking lane on each side of Prytania. First Street is a one-way street, riverbound (south). Its width provides for one travel lane and two parking lanes.
The plaintiff, Thomas Wilson, who was 38 years old at the time of the accident, was driving on Prytania in a downtown direction when his vehicle was hit by a car driven by defendant, John Cline. Cline was operating his vehicle in a riverbound direction on First Street. Cline entered the intersection of Prytania and First Street after stopping for the stop sign on First Street. Cline then crossed the uptown bound lane of Prytania, stopped and proceeded into the downtown bound lane of Prytania, causing the accident.
The testimony indicates that at the time of the accident, a NOPSI crew was working on gas service in the area. The NOPSI service truck was parked on Prytania, on the uptown lake corner, which was to Mr. Cline's right as he entered the intersection.
Because Mr. Cline died before trial, his deposition was introduced into evidence. In the deposition, Mr. Cline stated that he stopped several times during his progression into the center of Prytania prior to the collision. The last time Mr. Cline stopped, his car was located in the uptown-bound lane of Prytania, projecting several feet beyond the NOPSI truck and approximately five feet from the center line which divides the lanes of traffic on Prytania.
Thomas Melancon, the NOPSI foreman at the Prytania Street location, observed the accident. He testified that Cline stopped several times prior to the collision, the last time was in the middle of the street approximately two to three feet from the center line. Melancon also testified regarding the position of the NOPSI truck. He stated that the truck was parked on Prytania against a curb facing west. Melancon testified that the apparatus necessary to complete the job was located behind the truck and required approximately 20 feet of work space for proper operation. A barricade was also placed behind the area for safety purposes.
The plaintiff, Thomas Wilson, testified that the NOPSI truck was located in a no parking zone on Prytania Street. Wilson testified that he discounted the truck as irrelevant until after the accident when he noticed that it was parked in a no parking zone. Further, he stated that he did not associate the truck with the accident at the time of the occurrence.
The final witness at trial was Mary Stone, an employee of the Louise S. McGhee School on Prytania Street. She stated that she saw a truck parked in a no parking zone on First Street facing towards the river.
The trial judge bifurcated the trial and made an oral finding on liability, finding Cline 50 percent at fault and NOPSI 50 percent at fault. In his reasons for judgment, the trial judge found that the NOPSI truck was parked in a no parking zone on Prytania Street. The trial court erroneously found this factor to be determinative concerning the issue of NOPSI's fault.
NOPSI'S LIABILITY
Much of the trial testimony centered on the location of the NOPSI truck. There was conflicting testimony regarding whether or not the truck was parked in a no parking zone. Although the trial judge was not in error in making the specific finding that the truck was parked in the no parking zone, the location of the NOPSI truck was not the cause of this accident.
In determining NOPSI's liability in this situation, a duty-risk analysis should be applied to the facts. Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La. 1976); Dixie Drive-It-Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). For a plaintiff to prevail, he must prove by a preponderance of the evidence that the defendant's conduct was a cause-in-fact of the accident; that there was a duty imposed upon the defendant under the circumstances of the case; that the risk of the particular injury which the plaintiff suffered was within the scope of *422 the protection of that duty; that the defendant breached that duty; and that the breach of the duty requires a response in damages. State Farm Mutual Insurance Co. v. South Central Bell, 343 So.2d 758 (La.App. 3d Cir.1977).
A cause-in-fact should be a substantial factor in the chain of events culminating in an accident. It is a "necessary antecedent" without which the accident would not have taken place. If the accident would have occurred, regardless of such cause, then that factor would not be a cause-in-fact. Dixie Drive-It-Yourself, supra.
Applying a duty-risk analysis, the question becomes whether the NOPSI truck was a cause-in-fact of the accident. Consequently, it must be determined if NOPSI's conduct was a substantial factor. We conclude that it was not.
The record clearly shows that Mr. Cline was travelling on First Street in a southerly direction. As Mr. Cline reached the intersection of Prytania, he stopped his car. The NOPSI truck was parked to his right. Mr. Cline then proceeded to stop his car several times while approaching the center line of Prytania. Assuming arguendo that the truck may have blocked Mr. Cline's view of traffic travelling in the same lane as the Wilson vehicle (east), the record is clear that Cline stopped on Prytania, a few feet from the center line, before colliding with the Thomas vehicle. We can only conclude that when Mr. Cline stopped in the west bound lane near the center of Prytania, he was clear of the NOPSI truck and it could not have obstructed his line of vision. Clearly, Cline had ample opportunity to gain an unobstructed view of the oncoming traffic and NOPSI's truck was not a factor in causing the accident.
DAMAGES
The trial court awarded plaintiff $600,000.00 for injuries sustained in the accident and $4,941.78 for medical damages. There was no award for future medical expenses.
Following the accident the plaintiff suffered from discomfort in the left knee. An arthrogram revealed a meniscal tear with degenerative arthritic changes in the knee. There was testimony by Dr. Ray Haddad, plaintiff's attending physician, that the arthritic changes pre-dated the accident. Without the arthritic degenerative change, the physician was of the opinion that the disability rating would be 10 percent; accounting for the arthritic degeneration the disability rating would be 20 percent. Plaintiff received some rehabilitative therapy and a review of the record indicates that it is unlikely that there should be any future surgical intervention.
Plaintiff also complained of discomfort to his neck following the accident. Again, the examining physician could not positively attribute the injury to the accident but stated that Wilson had pre-existing degenerative arthritic changes in his spine. Further, Dr. Haddad stated that the accident caused at most a three to six month injury to his neck.
The scope of appellate review of general damages is limited to lowering (raising) the award to the highest (lowest) point which based on the particular facts of the case is within the trial court's reasonable discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). We find that the damages awarded by the trial judge are excessive in light of the injuries sustained. A review of prior jurisprudence requires this court to reduce the award of general damages to $100,000.00 which would have been the highest amount which plaintiff have been awarded so as not to have been an abuse of the trial court's discretion.[1]
UNINSURED MOTORIST COVERAGE
At the conclusion of trial on the liability issue, State Farm, Mutual Automobile Insurance Company, Wilson's uninsured motorist carrier, moved to be dismissed from *423 the suit. The basis of State Farm's motion was that, since NOPSI and Cline were found to be joint tort feasors, then the plaintiff would not be entitled to uninsured motorist coverage because, although Cline was under-insured, the plaintiff would receive the full amount of his damages from NOPSI. The trial court granted State Farm's motion, dismissing State Farm without prejudice, conditioning it on NOPSI's ability to pay the judgment. The court stated that if NOPSI were unable to pay, the plaintiff's right to collect his $100,000.00 policy coverage from State Farm is reserved.[2]
Finding no liability on NOPSI's part, we pretermit the question of whether the trial court erred in releasing the uninsured motorist carrier when there was a solvent in solido tort feasor. The terms of the release were conditioned upon NOPSI's ability to pay. Obviously since NOPSI is not liable, it is not required to pay, and consequently State Farm is responsible for fulfilling its obligation as uninsured motorist carrier.
For the foregoing reasons, we reverse the judgment of the trial court as it pertains to NOPSI, attributing the accident to Cline. Additionally, the plaintiff's damages are reduced to $100,000.00.
AFFIRMED IN PART; REVERSED IN PART; AND AMENDED.
NOTES
[1] Blakeney v. Tidewater Compression Service, Inc., 463 So.2d 914 (La.App. 2d Cir.1985), writ denied 467 So.2d 535 (La.1985);

Wesley v. City of Denham Springs, 455 So.2d 1183 (La.App. 1st Cir., 1984, writs denied 460 So.2d 605, 606 (La.1984);
Brown v. Winn-Dixie Louisiana, Inc., 460 So. 2d 6 (La.App. 1st Cir., 1984);
Blanchard v. 12055 Airline Corp., 432 So.2d 328 (La.App. 1st Cir., 1983).
[2] The limitation of liability on Mr. Cline's policy was $5,000.00.