580 So.2d 967 (1991)
Betty CRANDELL
v.
WINN-DIXIE LOUISIANA, INC.
No. 91-CA-5.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 1991.
Becnel, Landry & Becnel, Sylvia T. Steib, Reserve, for plaintiff-appellant.
Aucoin, Unland & Eppling, Leon A. Aucoin, Mary D. Sentenn, Metairie, for defendant-appellee.
Before GAUDIN and GRISBAUM, JJ., and FINK, J. Pro Tem.
*968 ELORA C. FINK, Judge Pro Tem.
Betty Crandell appeals the dismissal of her suit against Winn-Dixie Louisiana, Inc., for injuries suffered in a slip-and-fall accident at the defendant's supermarket in Laplace, Louisiana. We affirm, for the reasons below.
Appellant raises two issues for review by this court. First, she asserts the trial court erred in denying her motion in limine to exclude the post-trial depositions of two defense witnesses who failed to respond to trial subpoenas. Second, she asserts the verdict is contrary to the law and the evidence.
The plaintiff entered the Winn-Dixie store around 10 a.m. on Sunday, February 22, 1987, to purchase groceries. It was a rainy day and Crandell was wearing open-back sandals. As she approached the "buggy corral" to get a shopping cart, she slipped and fell to the floor, landing on her right hip and leg. Jeannine Loisel, a cashier at the store, came to her aid and helped her to get up. Dana Duhe, the assistant store manager, filled out an accident report, based on Crandell's statement. Crandell did not complain of any pain immediately after the accident, but completed her shopping and returned home.
Subsequently Crandell filed suit against the store, alleging she sustained injuries to her leg, knees, hip, and back, and that she has permanent disabilities as a result of the injuries suffered in the fall.
In its answer to her petition, Winn-Dixie asserted none of its employees had seen her fall and it denied any negligence. In its answers to plaintiff's interrogatories the defendant listed former store employees Jeannine Loisel, Dana Duhe and Norman Favor as witnesses to be called at trial.
During the course of discovery, the defendant scheduled the deposition of Loisel and the plaintiff scheduled the depositions of Favor and Duhe. All three depositions were set for July 20, 1989, but only Loisel's deposition was taken; neither Favor nor Duhe appeared, apparently because they had not been served. The depositions were rescheduled for three days later, but again Favor and Duhe did not appear. The plaintiff made no further attempt to reschedule the depositions.
At the bench trial, held on October 5, 1989, only the plaintiff testified. Crandell attempted to present testimony of another witness, Henrietta Carter, but Carter's testimony was excluded on the defendant's motion in limine because the plaintiff had been tardy in notifying Winn-Dixie of her intent to use Carter as a witness. The judge allowed the plaintiff to proffer Carter's testimony, however.
After Carter's testimony, plaintiff's counsel attempted to call Duhe and Favor, who had been subpoenaed by the defendant. Neither Duhe nor Favor was present in court. The judge issued bench warrants for their appearance, but plaintiff's counsel suggested their testimony could be taken by deposition. Defense counsel concurred and promised to insure their attendance at post-trial depositions. The judge agreed, ordered the case held open for 60 days pending depositions, and announced the parties would be permitted to file post-trial memoranda following the taking of the depositions.
On October 11, 1989, the trial judge signed a judgment granting Winn-Dixie's motion in limine to exclude Carter's testimony. Both Favor's and Duhe's depositions were taken subsequently. At Duhe's deposition plaintiff's counsel stated for the record that the deposition was being taken pursuant to the parties' agreement in court, to be submitted in lieu of testimony at trial. The testimony of both Duhe and Favor was damaging to the plaintiff's case and Crandell filed a motion in limine to exclude the depositions, based on the deponents' failure to appear at trial.
On March 13, 1990, the trial court rendered judgment in Winn-Dixie's favor, ruling that the plaintiff had failed to prove by a preponderance of the evidence that her fall was caused by any negligence of the defendant. Specifically, the judge found it "more probable than not that the floor was *969 dry, and therefore that the fall was not caused by any dangerous condition in the store. * * * [T]he defendant took all reasonable precautions to protect patrons from water that must inevitably be tracked into the stores on rainy days." The judge implicitly denied the plaintiff's motion in limine by referring to the testimony of Favor and Duhe in his reasons for judgment.
In her first assignment of error, the plaintiff contends she was prejudiced by the trial court's admission of the depositions in lieu of live testimony, in the following specifics:
1. Her pretrial discovery rights were compromised because she was unable to depose Duhe and Favor prior to trial. She contends Winn-Dixie was at fault because it knew the witnesses' whereabouts and because the defendant withheld information that Favor was an eyewitness to her fall, by stating in its answers to interrogatories that none of its employees had seen the accident and by failing to supplement its answers later.
2. Her case was prejudiced because, not knowing what Duhe or Favor would say under oath, she had no rebuttal prepared and was not given an opportunity for rebuttal because the depositions were taken post-trial.
3. Because Duhe's and Favor's depositions were contradictory, their testimony should have been heard in open court to allow the trial judge to make a credibility determination.
4. The judge erred in allowing post-trial depositions because LSA-C.C.P. art. 1450(A)(3)(b) requires "exceptional circumstances" before deposition testimony may be used in lieu of live testimony and no such circumstances existed in this case.
5. It was error to strike the testimony of Henrietta Carter for lack of notice to the defendants, when the court allowed introduction of post-trial testimony that the defendants concealed from the plaintiff.
We find no merit to these arguments. Although the depositions of Duhe and Favor were reset when they failed to appear at the first setting, they failed to appear at the second setting also. The plaintiff, however, neither moved to compel discovery nor to seek sanctions (LSA-C.C.P. arts. 1469, et seq.). Further, although the plaintiff was advised well in advance of trial that the defendant intended to call both Duhe and Favor, she did not file her motion in limine until after the trial, following the court's written denial of her proffer of Carter's testimony. The plaintiff failed to establish that any action of the defendant prevented her from pursuing pretrial discovery.
Instead, it was plaintiff's counsel who raised the suggestion of taking the post-trial depositions of Duhe and Favor; further, at Duhe's deposition, plaintiff's counsel agreed for the record to defense counsel's statement that the deposition was being taken in lieu of live testimony.
The trial court is vested with discretion over the manner in which a trial should be conducted. LSA-C.C.P. art. 1631(A). This discretion includes holding the case open to take further evidence. LSA-C.C.P. arts. 1430.1, 1431, 1450, 1631, 1632; Bricks Unlimited, Inc. v. Stepter, 538 So.2d 1147 (La.App. 4 Cir.1989); Quealy v. Paine, Webber, Jackson & Curtis, 464 So.2d 930 (La.App. 4 Cir.1985). The reviewing court may interfere only where the ruling is manifestly erroneous. Bricks Unlimited, Inc. v. Stepter, supra.
Under these circumstances, we hold that the plaintiff waived her right to object to the depositions and the trial judge properly denied the plaintiff's motion to limit or exclude the testimony.
In her second assignment of error, the plaintiff contends the judgment of the trial court was contrary to the law and the evidence.
As stated above, the weather was rainy on the day of the accident and Crandell was wearing backless sandals. She stated she saw no "Wet Floor" signs or rubber mats on the floor by the entrance. She also said the floor was slippery where she fell, adding that even when Loisel was trying to help her up, she kept slipping and had to *970 hold on to a grocery cart to pull herself up. After she was finally able to stand, she continued her shopping because she felt no pain at the time.
The defense pointed out, however, that the plaintiff had answered differently in her deposition. She had indicated at one point that the floor was slippery from water, but later responded that no one asked whether she actually saw water.
On redirect examination at trial, she explained that water was dripping from the carts that had been brought in from outside, because the handle on which she pulled herself up was wet. She also pointed out that in her deposition she did not state specifically she noticed water on the floor, but did state she saw the stock clerk mopping the area in which she fell, after she got up.
The rest of the evidence was from the deposition of the Winn-Dixie employees. Dana Duhe was in charge on the day in question. He did not remember who helped the plaintiff up after she fell, but he recalled that she fell near the entrance on a rainy Sunday morning. He testified the floor was damp where she fell, but there were no puddles. He stated that, although Winn-Dixie had no set policy for rainy days, at the Laplace store they placed "Wet Floor" signs and extra doormats at strategic spots and assigned an employee to remove any water from the floor. On the day of this accident the signs and mats were in place at the front door leading to the cart corral. In addition the stock clerk, Norman Favor, had been assigned to check for and remove any water from the floor. Duhe testified Favor was sweeping in the rear of the store when the accident occurred and had to be called to the front to mop the site of the fall. Duhe also said employees performed periodic inspections for water puddles, although not on any preset schedule.
Jeannine Loisel testified she was working in the checkout area near the front entrance. Although she did not see the plaintiff slip, she heard her fall and went over to help her up. Loisel stated the floor was dry at that spot, otherwise she would have gotten towels to wipe it. She said the plaintiff kept saying the floor was wet as she was being helped to her feet. She further testified that she did not know if the floor was wet in the immediate area of the buggies, but drew a sketch showing the spot where the plaintiff fell was several feet away from the cart corral. (In contrast, the plaintiff indicated she was reaching out for a cart when she fell.)
Loisel said that Favor was stationed near the front entrance with a mop and bucket to dry the area as water was tracked into the store. She also stated there were mats on the floor by the entrance and orange safety cones stating "Wet Floor" were placed by the counter near the grocery carts.
Norman Favor testified that on the day of the accident he placed two mats longitudinally on the floor by the entrance because of the rain, as well as four orange "Wet Floor" safety cones. He said one cone was set at the corner of the customer service counter, approximately eight to ten feet from the buggy corral. Another was directly in front of the corral and two others were near the produce section and the entrance, respectively.
Favor stated that when Crandell fell he was standing near the entrance with a mop and a bucket, cleaning standing water. He saw the plaintiff fall near the middle of the customer service counter, several feet from the cart area. He stated there was no water on the floor and said he had inspected the area less than five minutes prior to the accident. He did not mop the area after she fell nor did he go over to assist her because Loisel and Duhe were already there.
Favor testified the store's rainy-day policies included the posting of "Wet Floor" signs, the placing of mats near the entrance and the cart area, stationing an employee near the entrance to mop wet spots as they occurred and to warn customers, and leaving the wet carts brought in from the parking lot out under the roof overhang to drip-dry before bringing them back into the store. He said at the time the plaintiff fell the parking-lot carts were still *971 under the overhang because the after-church crowd had not yet arrived, so there were enough carts inside the store.
Questioned about Duhe's testimony that Favor had had to be called up front from the back of the store, Favor responded that Duhe was mistaken; not only was he at the front of the store, he had witnessed the fall and had seen that the floor was dry.
In a slip-and-fall case the plaintiff bears the burden of proving a foreign substance on the floor caused her to slip, fall, and sustain injuries; once that is established, the burden shifts to the defendant to exculpate itself from the presumption it was negligent. Kavlich v. Kramer, 315 So.2d 282 (La.1975). The store operator must prove "that his employees did not cause the hazard and that he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers." Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685, 687 (La.1984). See also McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La. 1987).
In 1988, the Legislature passed Act 714, enacting LSA-R.S. 9:2800.6. That statute, which modified the rule delineated in Brown and McCardie, supra, provides:
"A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damages.
"B. In a suit for damages by a person who has suffered damages as the result of a hazardous condition while on the merchant's premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonable prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions.
"C. In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employees shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.
"D. `Merchant' means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business." (Emphasis added.)
A reviewing court is precluded from setting aside the trial court's findings of fact, absent a conclusion that the trial court committed manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where there is conflicting testimony, reasonable inferences of fact should not be disturbed, even when the appellate court may feel its own evaluations and inferences are as reasonable as the trial court's. Rosell v. ESCO, 549 So.2d 840 (La.1989). "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong." Id., at 844.
Here, Loisel and Favor testified the floor was dry, while Crandell said it was slippery and Duhe testified it was damp. The plaintiff, however, could not state affirmatively that she saw water on the floor, while Duhe was uncertain on points about which Loisel's and Favor's testimony agreedi.e., Favor's being stationed at the front of the store. In addition, there was medical evidence that the plaintiff suffered from severe arthritis in her knees and hips and had fallen spontaneously on other occasions. We are unable to find on the evidence in the record that the trial judge was clearly wrong in his conclusions.
Further, even if we were to find that the plaintiff fell due to water on the floor, the defendant met its burden of proof to rebut the presumption of negligence. The store showed not only that it had a set policy for removing water, for warning customers and for protecting their footing as they *972 entered, but also that these measures were being carried out at the time the plaintiff fell.
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.